BALDWIN SHIPPING CO. *v.* UNITED STATES (No. 2154).[1]

STATUES MADE FROM PHOTOGRAPHS.

> Marble statues, made by professional' sculptors of good repute in faithful likeness of photographs, to be used as tombstone monuments, are entitled to entry free of duty as "Original sculptures or statuary" (par. 652, tariff act of 1913) rather than dutiable as works of art not specially provided for (par. 376).

United States Court of Customs Appeals, February 25, 1924.

APPEAL from Board of United States General Appraisers, Abstract 44658.

[Reversed.]

*Walden & Webster (Walter F. Welch* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Pelham St. George Bissell,* special attorney, of counsel), for the United States.

[Oral argument October 6, 1922, by Mr. Webster and Mr. Hoppin.'

Before SMITH, BARBER, and MARTIN, Associate Judges.

[Oral reargument February 13, 1924, by Mr. Welch and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

This case was first argued here on the 6th day of October, 1922, and after much consideration the court of its own volition directed a reargument, which has now recently been had.

The merchandise consists of three marble statues concerning which the relevant facts are as follows:

A dealer in statuary received an order from one customer, a widow, for a marble statue of her son who had been a soldier, and from another customer an order for two statues, one representing a man and the other a woman. Photographs of each of the persons whom the statues were to represent were furnished the dealer. He sent the same to Italy, where the photograph of the soldier was turned over to one sculptor and those of the man and woman to another. The

---

[1] T. D. 40051.

sculptors made clay models of the persons represented by the respective photographs and then took or caused to be taken and sent to this country photographs of such models for the inspection of the purchasers here. In two instances the photographs so returned were satisfactory to the purchasers, but as to one a change was suggested in the arrangement of the hair. This change was made in the clay model. The statues were made by the respective sculptors to correspond to the clay models, and constitute the importations. No copies or replicas of either have been made.

Each of these statues was designed to be placed upon a pedestal. They were ordered and intended for monumental purposes, the finished monuments to be placed at the respective graves of the persons represented thereby.

It appears that each of the sculptors above referred to is of good repute as such in Italy.

The appellant is a customs house broker, through whom the importations were made.

These statues were assessed for duty as works of art under paragraph 376 of the tariff act of 1913 which reads as follows:

Works of art, including paintings in oil or water colors, pastel, pen and ink drawings, or copies, replicas or reproductions of any of the same, statuary, sculptures, or copies, replicas or reproductions thereof, and etchings and engravings, not specially provided for in this section, 15 per centum ad valorem—

and are claimed to be entitled to free entry under paragraph 652, which is as follows:

Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen and ink or pencil and water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *

In its opinion overruling the protest the board stated, and parties hereto agree, that the only question is whether these statues are *original* under paragraph 652.

The Government, without otherwise stating its claim as to what would be an original sculpture or statuary under that paragraph, refers to the opinion of the Board of General Appraisers In re Baldwin Shipping Co., T. D. 37863, G. A. 8220 (35 Treas. Dec. 293), as

precisely stating its position in the case at bar. From that opinion it quotes as follows:

To be original, the artist must have been the author of the original conception. This could not be if a picture or a statue were used from which to make the piece. An original sculpture presupposes an artistic concept, an ideal or an idea translated into the statue or picture, and must partake of the thought, spirit, and artistic conception of the artist. We said in the case of the American Express Co., G. A. 7977 (T. D. 36765), that "originality, to satisfy the requirement of the statute, must extend to the thought, object, or conception of the artist; in other words, the vision which is interpreted and placed upon the canvas must be original with the painter." From this it would follow that an original sculpture must be the work of the artist from its conception or creation in the mind of the artist until it is completed in its material form. The carving, drawing, and other mechanical and skillful manual work of the artist is necessary to produce a work of art, but something more than that is necessary to produce an original work of art.

In this connection the Government argues that these statues are not original because "no latitude was left to the sculptor to exercise his original interpretation" in their production; that his work was purely mechanical, and confined to reproducing in marble the photograph transmitted; that it was in no way the conception or creation of the mind of the artist.

The importer, on the other hand, contends, in substance, that the definition of the word "original," as applied to sculpture and statuary, that may be gleaned from the case referred to by the Government, is too narrow, and that the logical result of the adoption thereof would be to hold that a statue of a person made from life by one of the great sculptors would not be an original statue, because it would be mechanical in the same sense that these statues are such, and would not be the original conception of the artist.

In its opinion the board, among other things, said:

It goes without saying that the desirability of a statue of this kind depends upon its accuracy in delineating and representing the original. Nothing may be said to have been left to the artist except to faithfully represent the person of the individual whose likeness was transmitted to the artist for his guidance.

Again, it said:

We are constrained to ask, was any latitude left to the sculptor to exercise his original interpretation in the production of these pieces? If not, they can not be said to be original sculptures within the meaning of the statute. We find in this situation there is no opportunity for original interpretation. Any variation from the form or lineaments as shown in the photograph and recognized by friends in the completed statue would have rendered them undesirable for the purpose for which they were intended.

We think the Board of General Appraisers has misapprehended the purpose and intent of paragraph 652. If correct in its view regarding the same, it is difficult to see how an original statue of any person can be produced, if it is a likeness of the individual it represents, that would be entitled to free entry thereunder. And

the same conclusion would follow as to paintings, drawings, and sketches.

In other words, if the artist, painter, or sculptor is limited to reproducing upon canvas or in marble (or other media of presenting the sculptor's art) a truthful resemblance or likeness of the form and features of the living subject, he can not produce an original painting or sculpture. This statement reduces to the logical conclusion that to produce an original sculpture the artist must present something he has conceived or imagined and not something that exists. It must be an ideal, not a reality. That is what the board apparently had in mind.

In United States *v.* Olivotti & Co. (7 Ct. Cust. Appls. 46; T. D. 36309 at 48) we said that "sculpture as an art is that branch of the free fine arts which chisels or carves out of stone or other solid material, or models in clay or other plastic substance for subsequent reproduction by carving or casting, imitations of natural objects, chiefly the human form, and represents such objects in their true proportions of length, breadth, or thickness, or of length and breadth only." This, of course, was a general suggestion and yet we think it is not consistent with the idea that an original sculpture must necessarily be the conception of the mind of the artist; must be an ideal and not a reality.

The statues before us are concededly works of art. They are made as the professional production of sculptors only and are not works of utility. They are apparently the only statues that have been made of the individuals whom they represent and we think they are original statues within the meaning of paragraph 652.

We are of opinion that under that paragraph a statue may be an original when produced by the sculptor from a photograph as well as from a person sitting before him. In each case it is clearly the effort and desire of the sculptor to show upon the marble the form and features of the person whom it is designed to represent, but in attempting to accomplish these results he calls into play not only his professional skill but his artistic imagination or conception. Of necessity he must do this in order to reproduce in marble the form and features of the subject of the photograph so that the likeness to the original is at once apparent. If he can not present a recognizable likeness, his efforts are in vain because one important purpose of obtaining the statue is that thereby shall be presented such a likeness of the individual. It seems to us that the sculptor who can do this must be possessed of and must exercise artistic imagination and conception of no mean order and we are unable to see why in so doing he is not producing an original sculpture.

In this connection it will be remembered that this is not an attempt to obtain free entry for copies of statuary made by an artist other than the one who made the original, but is apparently an honest

attempt to obtain and import statues of recently living persons of whom, so far as the record shows, no statues have heretofore been made.

The judgment of the Board of General Appraisers is *reversed*.

DISSENTING OPINION BY SMITH, JUDGE.

An importer of Italian marble, principally statuary, received an order for statues to be executed by sculptors from photographs delivered to him by his customers. The photographs were sent to Italy and from them models were made which were in their turn photographed. The photographs of the models were sent to the United States for approval and having been approved by the customers were sent to sculptors in Italy, who were ordered to proceed with the work.

The statues when finally completed were excellent and *faithful* reproductions of the photographs originally furnished. Indeed, the photographs so completely determined the conception of the artist that in one case the sculptor was not allowed even to arrange the hair as he pleased, but was compelled to sculpture it just as shown in the original photograph.

The sculptures were original in the sense that they were the first statues produced from the photograph, but they were not in my opinion original in the sense that they were the original conceptions of a sculptor. The sculptors were permitted to conceive nothing. They simply carved in stone a *faithful* reproduction of the photograph. It required skill and maybe art to reproduce the photograph in the round, but the mental picture and the conception of it in the round was a mental picture and conception which was wholly produced by the photograph itself.

Sculptors and painters may of course use photographs and models as aids to carry out their own conceptions of individuals and natural objects, but some play must be given to the imagination of the artist in order that his conception may be considered as original.

Painters and sculptors have been compelled to rely on photographs, pictures, and sketches in order to assist them in forming their own conception of Washington and Lincoln, but in no case has the finished work of the artist been a faithful reproduction of the photographs, pictures, and sketches to which they were compelled to resort. In fact, that their conceptions were original is established by the fact that the completed painting or sculpture of one artist differs radically from that of all the others.

If the stamp of originality attaches to a faithful reproduction in stone of photographs, it is hard to see why a painting of a photograph or the painting of a painting of a photograph should not likewise be regarded as original.

I am of the opinion that the judgment of the board should be affirmed.