UNITED STATES *v.* J. E. BERNARD & CO., INC. (No. 3266[1])

United States Court of Customs and Patent Appeals, March 19, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.
*Curtis E. Loehle* for appellee.

[1] T. D. 43932.

[Oral argument February 11, 1930, by Mr. Igstaedter and Mr. Loehle]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

· This is an appeal from the judgment of the United States Customs Court sustaining the protests of appellee and holding the imported merchandise entitled to free entry under paragraph 1704 of the Tariff Act of 1922 as original paintings. The collector described the importations as consisting of hanging paper, colored, which he classified and assessed for duty at the rate of 1½ cents per pound and 20 per centum ad valorem under and by virtue of paragraph 1309 of said act.

The claims in the protests read as follows:

It is claimed that the above-described merchandise is specially provided for and free of duty under par. 1704, tariff act of Sept. 21, 1922, as original painting in oil, mineral, water, or other colors.

It is also claimed that the merchandise is dutiable directly or indirectly as stated above under paragraph 1460, or is dutiable at 10% or 20% ad valorem under paragraph 1459. We claim refund on all duties or other charges illegally exacted.

Appellee did not contend in his brief, nor in oral argument, that either paragraph 1459 or 1460 was applicable to the merchandise in question. The pertinent parts of the paragraphs involved are:

PAR. 1309. * * * hanging paper, printed, lithographed, dyed, or colored, * * * 1½ cents per pound and 20 per centum ad valorem; * * *.

PAR. 1704. Original paintings in oil, mineral, water, or other colors, * * * including not more than two replicas or reproductions of the same; * * * and the word "painting" * * * as used in this paragraph shall not be understood to include any articles of utility nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

The Government contends that the importations are not, within the meaning and intent of said paragraph 1704, original paintings. Appellee contends that the importations are original paintings, but if not, they still should be classified under said paragraph 1704 as reproductions of original paintings.

The first question for determination is whether the importations are original paintings.

Two protests were filed by appellee. In protest 286105–G the merchandise there involved is described as "1 hand-painted wall Paper 'Courses de Chevaux'." In protest 298321–G the merchandise there involved is described as "1 pce. painted wall paper Vieux Paris."

Counsel for the importer in his opening statement upon the trial below said:

The issue here in these two protests pencil Nos. 340 and 341 is whether certain hand-painted wall-paper, "Courses de Chevaux," is properly dutiable at 1½ cents per pound and 20 per cent ad valorem under paragraph 1309, or whether these are original paintings free of duty under paragraph 1704.

The importations consist of panorama paintings copied and enlarged from miniature reproductions of antique wall papers which are no longer being manufactured.

Mr. Byfield, the owner of the merchandise, testified that he was the operator of the Sherman, Ambassador, and Fort Dearborn Hotels in Chicago, and that the merchandise was imported in individual strips rolled up, each strip being about 1½ feet by 6 feet; that one of the importations was used as a wall decoration in his living room in his personal suite at the Hotel Ambassador; that it hung on the wall in panels between wide wainscoting and bookcases in sections, and that the other importation would be used in the same way. His testimony concerning the subject of the paintings and the selection of the artist to produce them is as follows:

Q. Mr. Byfield, I show you the invoice covering these importations and ask you what, if anything, you had to do with the purchasing of the merchandise covered thereby?—A. These were ordered for my personal use.

Q. By you in person?—A. By me in person. I wanted some reproductions made of antique wall papers that are no longer being manufactured and I located an artist to paint them.

Q. They were painted to your order?—A. Yes, sir.

Q. Painted to fit in some particular place?—A. No. In size they were reproductions of the antiques.

Q. And painted in what?—A. In a distemper of color. I don't quite know the medium they use.

On cross-examination the witness testified as follows:

Q. * * * Did you select the subject for this wall paper?—A. Yes.

Q. Did you select it from a sample book or how did you happen to select it?—A. I selected it from cartouches or miniature reproductions of the old papers.

Q. In a catalogue?—A. No. It was from documents.

Q. Did it come in a roll?—A. In individual strips.

Q. When it was imported was it rolled up?—A. Yes; it was rolled up in strips of half a meter width.

Q. Strips half a meter width and how long?—A. The height is about a fraction over two meters, 1½ by 6 feet.

Q. Are any of these subjects——A. (Interrupting.) The scenes are pictures. It is a panorama, a reproduction of old block panoramas which are no longer being made as far as I know.

Q. It serves the purpose of wall paper?—A. Well, no. It is a wall decoration. Wall paper is much less expensive than that.

Q. It is used in the place of wall paper? Where you would use——A. (Interrupting.) No. I wouldn't use wall paper in the living room. I would use paintings, wainscoting, or paneling. Panoramas are not used in place of paper but are more expensive than mural decorations would be.

Q. Are they made by a lithographic process?—A. The old papers were made by an old fashioned wood-block process, 20 or 30 wood-block engravures.

Q. It is all the work of one man or is it the work of assistants working under a. chief?—A. That was the old process, I believe. Several men, I believe, worked a set out. It was a secret process.

Q. How were these particular ones made?—A. These were painted by one man.

Q. How do you know?—A. I have seen the man.

Q. He told you he painted them all by himself?—A. All by himself. It took me a month to find a man who could do it. It is the only place I know of that such a thing can be done.

Q. Did you shop around at all?—A. Yes. My commission merchant made a search of Paris, beginning by making a search of old papers.

The Customs Court found that the paintings in issue were original paintings within the meaning of paragraph 1704, and therefore sustained the protests of appellee. We can not agree with this conclusion. It seems clear to us that they are not original paintings, but are exactly what the witness Byfield, the owner of them, said they were—"reproductions of antique wall papers."

Appellee relies upon the opinion of this court in the case of *Baldwin Shipping Co.* v. *United States*, 12 Ct. Cust. Appls. 128, T. D. 40051. In that case the court held that marble statues, made by professional sculptors of good repute in faithful likeness of photographs, to be used as tombstone monuments, were entitled to free entry as "original sculptures of statuary." The court in its opinion said:

We are of opinion that under that paragraph a statue may be an original when produced by the sculptor from a photograph as well as from a person sitting before him. In each case it is clearly the effort and desire of the sculptor to show upon the marble the form and features of the person whom it is designed to represent, but in attempting to accomplish these results he calls into play not only his professional skill but his artistic imagination or conception. Of necessity he must do this in order to reproduce in marble the form and features of the subject of the photograph so that the likeness to the original is at once apparent. If he can not present a recognizable likeness, his efforts are in vain, because one important purpose of obtaining the statue is that thereby shall be presented such a likeness of the individual. It seems to us that the sculptor who can do this must be possessed of and must exercise artistic imagination and conception of no mean order, and we are unable to see why in so doing he is not producing an original sculpture.

The court further said immediately following the language quoted:

In this connection it will be remembered that this is not an attempt to obtain free entry for *copies of statuary made by an artist other than the one who made the original*, but is apparently an honest attempt to obtain and import statues of recently living persons of whom, so far as the record shows, no statues have heretofore been made. [Italics ours.]

The language last quoted clearly distinguishes that case from the case at bar. The paintings here in question are copies of pictures upon antique wall paper, made by an artist other than the one who made the original, and are not original paintings within any of the

decisions that have been brought to our attention. To hold that painted copies of pictures, of any character, shall be admitted free of duty as original paintings because they may be upon a larger scale than the pictures of which they are copies would clearly be contrary to the intention of Congress expressed in paragraph 1704. It was careful to provide that not more than two replicas or reproductions of an original painting might be admitted free of duty. It seems to us that it would be absurd to hold that, while only two replicas of a famous painting could be admitted free of duty, any number of painted copies of pictures not original paintings could be so admitted, upon the theory that such copies were original paintings.

If it be said that because the original pictures from which the paintings were copied were miniatures only of the original, and the painted copies were enlarged to the original size, such copies are original paintings, then copies of every famous painting in Europe might be painted from photographs or miniatures of such paintings and be admitted free of duty as original paintings. It is clear to us that such was not the intention of Congress. It is true that there might be instances where an artist had used a photograph or a miniature as a general guide for him to follow, but the artist exercised such esthetic imagination and conception as to justify his completed work being classed as an original painting; but that is not the case with the paintings here in issue. Their owner testified that they were "reproductions of the antiques." The artist was not called upon to conceive anything, nor exercise his imagination. He was called upon to paint a faithful reproduction of scenes upon antique wall paper, and the success of his work depended upon his faithfully following the original as shown by the miniatures which he copied.

Appellee in his brief states:

In the present case the paintings were made as nearly as possible in both design and size like the original antiques, and this was done, as stated by the witness, by an artist who worked from miniature cartouches of such antique designs.

We are clear that the paintings were not original paintings within the meaning of paragraph 1704.

Appellee next contends that if the paintings in question are not free of duty as original paintings they are nevertheless reproductions of original paintings and should be so classified under paragraph 1704.

The difficulty with this contention is that there is no testimony whatever in the record that the antique wall paper designs, which the miniatures represented, were original paintings. To the contrary, Mr. Byfield, the owner, testified as follows:

The old papers were made by an old-fashioned wood-block process, 20 or 30 wood-block engravures * * *. Several men, I believe, worked a set out. It was a secret process.

In order that a reproduction of a picture be classified under paragraph 1704, it is specifically prescribed that it must be a reproduction of an original painting. There is no evidence that the paintings in issue are such. We think they are exactly what the owner testified them to be—"reproductions of antique wall papers that are no longer being manufactured"—and that they were properly classified by the collector as "hanging paper, colored."

The judgment of the Customs Court is *reversed.*