PITT & SCOTT *v.* UNITED STATES (No. 3346)[1]

United States Court of Customs and Patent Appeals, January 21, 1931

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and
*Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 14, 1930, by Mr. Carter and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,
Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the construction and application of two paragraphs of the Tariff Act of 1922, relating to works of art, which follow:

PAR. 1449. Works of art, including paintings in oil or water colors, * * * and copies, replicas, or reproductions of any of the same; * * * all the foregoing, not specially provided for, 20 per centum ad valorem.

[1] T. D. 44584.

PAR. 1704. Original paintings in oil, mineral, water, or other colors, * * * and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, * * *.

The importation involved consisted of eight so-called original paintings in oil which were painted by an American artist abroad and were designed, painted, and imported for the express and only purpose of being reproduced by photographic or lithographic process and then used to illustrate parts of magazine stories in "Hearst's International Combined with Cosmopolitan."

It is conceded that the artist in painting them made use of no mechanical means such as stenciling, etc. They were painted with a brush and in oil colors, and they are not copies, replicas or reproductions and no painted copies were made from them.

The testimony is to the effect that the two stories which were to be illustrated were read by the art editor of the magazine company, in the United States, and instructions were prepared for the artist, which instructions called attention to certain parts of the story for which illustrations were desired. One of the exhibits is before us and shows a man standing and a woman seated in a room, and evidently engaged in conversation. The testimony shows that the artist was instructed that there were certain places in the story where certain characteristics of the individuals were mentioned, and that these places were marked so that after the artist read the story his painted characters would conform to the text; that he conceived without model the characters he produced and was guided only by his own conception and such meager instructions as the art editor had afforded him. The testimony also shows that the pictures were designed, intended and provided for the sole and only purpose of being reproduced in the form of plates to be used in illustrations in the magazine; that the pictures after importation were sent to the photographic engraving company, plate makers, who were furnished the dimensions desired; that the plates were later sent away and electrotyped and the ones used were then sent to the printers. Four of the paintings involved were not used for the reason that the story was not published. The testimony shows that they had no use for these four and that they were a "dead loss" and that they were in the magazine company's storerooms.

The Government, in the court below, tried the case apparently upon the theory that since the paintings were made pursuant to certain instructions, they were not original conceptions of the artist and were, therefore, not original paintings within the meaning of paragraph 1704. The Government also took the position that they were articles of utility and, therefore, expressly denied classification under said paragraph. The collector classified the merchandise under paragaph 1449 and levied duty at 20 per centum ad valorem

provided for thereunder. Appellants protested and claimed them classifiable under paragraph 1704.

The court below held the articles to be original paintings in oil, but followed its decision in Abstract 42491 and held that the importation consisted of articles of utility and denied it classification under paragraph 1704. In the opinion the court below, after stating the Government's position that the paintings were not original, aptly said:

A portrait is no less original because the artist has the subject before him and is guided by it. Nor is a landscape lacking in originality because painted from nature. That the artist is obliged to follow the author's general description of a character does not prevent the painting from being the original conception of the artist of a character with those general characteristics. It has been said and is generally accepted, we think, that no two people see the same thing in exactly the same way. Certainly, then, a fictitious person or persons would not appear to two people in exactly the same way. We think upon the record that the plaintiffs have proved the originality of the paintings.

We think the foregoing is a correct statement of the law. See *Baldwin Shipping Co.* v. *United States*, 12 Ct. Cust. Appls. 128, T. D. 40051.

Upon the question of whether the paintings here involved are articles of utility, the lower court said:

As stated above, paragraph 1704, under which the plaintiffs claim free entry, expressly excludes paintings which are "articles of utility." In Abstract 42491 this court, then the Board of General Appraisers, in passing upon this same question under the Tariff Act of 1913, paragraph 652 of which was reenacted, practically without change, as paragraph 1704, *supra*, said:

The paintings were introduced in evidence. It appears from the testimony that they were imported for the express purpose of being used as illustrations in a serial story which appeared in one of the popular magazines.

\* \* \* \* \* \* \*

Paragraph 652, under which the importers claim, provides, among other things, that the word "painting" as used in the paragraph "shall not be understood to include any articles of utility." The question, then, to decide is whether these may be considered articles of utility. We must bear in mind that they are ordered for a certain purpose, to wit, the illustration of a serial story which assists in making up a magazine, a commercial commodity. Anything which adds to the interest of the story adds to the mercantile value of the magazine. The importers, in contracting for these, had in mind, of course, the purpose (and from our inspection of the goods we should say the single purpose) which would make the pictures desirable or valuable, to wit, an instrumentality in enhancing the marketable value of the magazine. We can not escape the thought that this is such a utilitarian purpose as would exclude them from classification under paragraph 652. \* \* \*

We find nothing in the record in the instant case to cause us to depart from the reasoning and conclusions above quoted.

We think that the phrase "articles of utility" should be given a very liberal construction, because we believe that Congress had in mind, in providing for free entry of original paintings but excluding articles of utility, only such paintings as were designed in their creation to be used solely in such a way as to appeal to the esthetic sense in the observer of the same, and that a painting conceived and

created solely for a utilitarian purpose, and which is not designed as a means in itself of exciting the emotions of the observer, does not come within the provision of paragraph 1704, but is excluded therefrom by the phrase "articles of utility." In the case at bar it is affirmatively shown that the artist definitely understood, when engaged to paint the importations in question, that his productions would not be enjoyed except when reproduced into something else by mechanical means. As we view it, these paintings were created as one of the steps in the production of a magazine, which is a commercial commodity. The purpose was to add to the mercantile value of the magazine, and their creation had no other purpose. These facts, we think, make the paintings in question "articles of utility" within the meaning of paragraph 1704.

There is a clear distinction between the case a bar and that of *Progressive Fine Arts Co.* v. *United States*, 18 C. C. P. A. (Customs) 306, T. D. 44506. The latter case involved the importation of original paintings from which plates were made for reproductions of the same, after which the paintings were returned to the country of exportation. There was no evidence that the paintings there in question were conceived or created for any utilitarian purpose, and we there held that the classification of the paintings must be determined by what they actually were at the time of importation and not by the use the importer made of them. In other words, original paintings do not become articles of utility by reason of the fact that, after importation, they are used for a utilitarian purpose; but, if they are created solely for a utilitarian purpose, upon the order of and in accordance with the instructions of the importer, they are articles of utility.

Naturally, the most frequent application of the phrase "articles of utility" in paragraph 1704 relates to articles composed in part of paintings, such articles having in themselves, however, utilitarian uses irrespective of the paintings. While the paintings in question do not, in fact, come strictly within this class, nevertheless they are clearly within the spirit of it; and we think that the particular kind of utility attaching to the importations here involved is as much a bar to their free entry as is the utility of that class of articles first referred to in this paragraph.

We hold that the articles in question are articles of utility, and therefore the judgment of the United States Customs Court is *affirmed.*

### CONCURRING OPINION

BLAND and HATFIELD, Judges, concurring specially:

While we concur in the result that the collector's classification must stand, we must respectfully dissent from the reasoning of the majority, and will briefly state our position.

If the exhibit before us, representing the importation, is a painting in oil which is a work of art, it is an original one and is free of duty under paragraph 1704, since, in our judgment, it is not excluded therefrom by the "article of utility" term. If it was such an original painting in oil and was incidentally an article of utility also, within the meaning of that provision, we agree that it would be dutiable under paragraph 1449 as the particular kind of painting in oil and work of art as is therein provided for.

A review of the legislative history of the "article of utility" provision in paragraph 1704 is convincing that Congress by its use sought to exclude from the free list articles which were works of art but which were also, independent of their character of appealing to the emotions, incidentally, articles of utility, a good example of which is a screen upon which is a painting in oil. This view is borne out by a reading of the Summary of Tariff Information of 1908, pages 623 and 624, where, after setting out at length the "Decisions and Interpretation" of the Board of General Appraisers, the following is found:

### PAINTINGS

Comments and suggestions: In view of the efforts now being made to secure the admission as paintings at a low rate of duty of photographs, lithographs, calendars, etc., which have been passed over with a brush, it would seem advisable to reenact the proviso which was in the corresponding paragraph of the act of 1894, excluding paintings, so-called, made wholly or in part by stenciling or other mechanical process. Other articles with incidental painting thereon should also be excluded.

Several suits are now pending in which the importers contend that lithographs painted over by hand and calendars decorated by hand painting are entitled to entry as paintings.

The painted production at bar is not a thing which appeals to the emotions, having also, incidentally, an independent characteristic of utility. Owing to the nature of the article before us, if its utilitarian character is admitted, its lack of character as a work of art must seem obvious. We think the reasons assigned in the majority opinion for holding it to be an article of utility conclusively show that it is not a work of art, a "painting in oil" or "an original painting in oil" within the meaning of either paragraph. That a painting in oil which is a work of art must necessarily be one that appeals to the emotions is so well settled as to require no citation.

We quote a part of the majority opinion:

* * * and that a painting conceived and created solely for a utilitarian purpose, and which is not designed as a means in itself of exciting the emotions of the observer, does not come within the provision of paragraph 1704 * * *

If the above should be regarded as a true statement of the law to be applied in determining the classification of paintings and works of art, the phrase "nor under paragraph 1449" should be added to the

same. If an article which is conceived and created solely for utilitarian purposes, and which is not designed as a means in itself for exciting the emotions of the observer, is to be excluded from paragraph 1704 because it is solely a work of utility, it should be excluded also from paragraph 1449 for the same reason, since, if it is solely utilitarian, it is not a work of art.

The instant importation may be the work of an artist, but that does not necessarily make it a work of art. Capable artists may exercise great skill in producing contributions to the industrial arts. It is not even suggested that the productions of the artist at bar appeal to the emotions of those who observe them. They are not of the character of works that are intended to excite the emotions. Such was not the intent of the artist when he made them and such was not the purpose of their importation or subsequent use, but, as stated in the majority opinion, they "were created as one of the steps in the production of a magazine, which is a commercial commodity. The purpose was to add to the mercantile value of the magazine, and their creation had no other purpose," and an examination of the same discloses, in our judgment, that they do not possess the characteristics which excite the emotions such as are found in a work of art.

If by them the emotions of anyone are to be excited or are intended to be excited, it would be those who behold the mechanical reproductions of the same on the partly printed pages of a magazine. They were not only designed solely for that purpose, but, as far as we can determine, they are fitted only for that purpose.

In the opinion, the description of the exhibit should not leave out the important fact that it is not in the ordinary form of a painting in oil as that term is generally understood. The exhibit before us is constructed somewhat in outline. The central portion of the same consists of two individuals and one or two prominent articles of furniture in a room, with the irregular edges of the furniture and room merging into the white color of the canvas, and is evidently so designed as that such white edges will merge into the color of the magazine page, containing part of a printed story. In other words, in its construction it is specifically designed for the magazine page and not for the uses prevailing generally for works of art.

We do not mean to suggest that an oil painting by an artist may not still be a work of art although intended by the artist to be reproduced and used only on a magazine page. The intent of the artist or the intent of the importer could hardly be said to be conclusive as to the nature of the article, but if such intent of the artist finds expression in the production, as in the case at bar, which deprives it of its work of art character, it should not be classified for tariff purposes as a work of art.

The merchandise was classified by the collector under paragraph 1449. The importer made but one claim—that it was free of duty under paragraph 1704. It is clear to us that it is not classifiable under either paragraph. Since the importer must not only show the erroneous classification of the collector but point out and claim under the proper provision, the classification and assessment of the collector should stand and the judgment of the court, for the reasons herein assigned, should be *affirmed*.