(C.D. 3525)

H. H. Elder & Company
Forest Lawn Company } *v.* United States

United States Customs Court, Third Division

.(Decided July 25, 1968)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Mollie Strum* and *Morris Braverman*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of a mosaic panel invoiced as "Pannello Acenzione" which was produced in and exported from Italy. The mosaic was classified in liquidation as a work of art not specially provided for under 19 U.S.C.A., section 1001, paragraph 1547(a) (paragraph 1547(a), Tariff Act of 1930) and assessed for duty at the rate of 20 per centum ad valorem. It is claimed by the plaintiff-importer that the mosaic is properly classifiable as an "original mosaic" under the duty free provision therefor in 19 U.S.C.A., section 1201, paragraph 1807(a) (paragraph 1807(a), Tariff Act of 1930, as amended by Public Law 86–262).

The competing tariff provisions read:

[Paragraph 1547(a)]

Works of art, . . . all the foregoing, not specially provided for, 20 per centum ad valorem.

[Paragraph 1807(a), as amended]

. . . original mosaics . . . . The terms . . . 'mosaic', . . . as used in this paragraph, shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process . . . .

The evidence in the case consists of the testimony of Frederick A. Hanson, architectural supervisor and member of the Art Committee of the Forest Lawn Company, the importer of the involved mosaic panel, photographs of the mosaic panel installed in its setting in the main

facade of the mausoleum garden combination in the Cypress Gardens memorial park, a cemetery owned by the importer in Cypress, Calif., a photograph and a transparency of the oil painting of the "Ascension" by La Farge, and depositions of Francesco Bacci and Spartaco Ferrari, Italian mosaicists.

It appears from the evidence that the importer commissioned Messrs. Ferrari and Bacci to produce a mosaic panel of the "Ascension" for placement in the Cypress Gardens cemetery, selecting a religious theme on the basis of the oil painting of the "Ascension" by La Farge located in the Church of the Ascension in New York City. To this end the importer sent or caused to be delivered to the mosaicists a transparency of La Farge's "Ascension". It seems that the importer was not satisfied with the general values of La Farge's painting because it lacked what the importer regarded as a certain ethereal and celestial expression for exhibition out of doors; and consequently, the importer gave instructions to the mosaicists as to the qualities desired in the commissioned work, according to testimony of Mr. Hanson. However, the mosaicists maintained that they received no instructions on that subject from the importer. In any case, there seems to be no dispute over the fact that the only exposure which the mosaicists had to La Farge's painting was by way of the transparency. And the mosaicists maintained that the transparency only gave them an idea as to how to create the mosaic panel.

As for the work of constructing the mosaic imported in this case, it appears that the design, or cartoon as it is called, was made by a professor Ferruccio Vezzoni in accordance with measurements given the mosaicists by the importer. The importer's measurements called for a mosaic panel whose dimensions were narrower and taller than those of La Farge's "Ascension", resulting in a modification of the figure of Christ to conform to the proportions shown on the transparency.

The cartoon was cut into sections, numbering about 20 in all, and the work of gluing the tesserae or bits of colored glass to the cartoon was performed by the mosaicists with the aid of members of their staff, working under the supervision of the mosaicists. A critical step in the mounting of the tesserae was said to be the selection of the colors and a method of using them. It appears here that this work was performed only by the mosaicists personally.

When the involved mosaic was completed it was shipped to this country in sections and erected in the architectural setting in Cypress Gardens which had been designed especially for this purpose by Mr. Hanson. The installation of the mosaic panel was undertaken first by Mr. Ferrari, and then by his assistant, Mr. Poli, when Mr. Ferrari had to return to Italy for health reasons. Installation of the panel en-

tailed cementing the mosaic into its setting, removing the cartoon, tapping with a special tool, replacing tesserae which shifted during transit, retouching where needed, and washing the mosaic. Laborers in the employ of the importer assisted Mr. Ferrari and Mr. Poli in cementing the panel into its setting.

With respect to training, education and experience, the record shows that both Ferrari and Bacci had been students of the late Professor Antonio Castaman, a teacher in mosaic work who had studios in Pietrasanta and Venice, Italy, had exhibited their works in Italian cities, and had been commissioned to and did create mosaic works existing in various parts of this country as well as in Puerto Rico and in Italy. Professor Vezzoni attended the Academy of Fine Arts in Florence, Italy, and obtained a diploma to teach fine arts. An assistant, Antonio Bacci, received a diploma as a maestro d'arte from the Art Institute of Pietrasanta, and another assistant, Dino Bacci, attended the same school. And other assistants were tutored by Messrs. Ferrari and Bacci themselves.

If the imported mosaic is actually like it is depicted in plaintiffs' exhibits 2 and 4 (and there is no evidence that it is not) we must conclude, from a lay point of view, that the mosaic appears to be a work of fine quality and high artistic talent which we have no hesitancy in calling a work of art. The evidence shows without contradiction that the mosaic panel in question was solicited by the importer as an art form, that it was produced by recognized and accomplished artists for exhibition purposes, and that there is no utilitarian or industrial usage here involved.

The question before the court is whether the subject mosaic is "original". Both parties maintain and we find that the test of originality under the tariff statutes is whether or not the artist exercised his own esthetic imagination and conception in creating the work. Plaintiffs contend that the involved mosaic is original, citing principally the case of *Forest Lawn Memorial-Park* v. *United States*, 29 Cust. Ct. 224, C.D. 1472. And defendant contends that the mosaic is a copy of La Farge's painting of the "Ascension", citing *American Express Co.* v. *United States*, 31 Treas. Dec. 344, T.D. 36765. Neither case involved mosaic art works.

In *Forest Lawn Memorial-Park* v. *United States*, *supra*, the merchandise was statuary produced by a professional sculptor with the aid of photographs of deceased persons, furnished by the importer. The court held the statuary to be original sculptures upon a finding that the sculptor exercised his own esthetic imagination and conception, his own artistic skill and invention in creating the statuary, citing a number of cases, including *Baldwin Shipping Co.* v. *United States*, 12 Ct. Cust. Appls. 128, T.D. 40051. But in *American Express Co.* v.

*United States, supra,* the merchandise was chalk drawings which the Board of General Appraisers found had been intentionally copied by the artist from paintings of old masters. The Board concluded that stating (p. 346) :

the drawings were copies of the paintings, and not original drawings,

. . . Originality, to satisfy the requirement of the statute, must extend to the thought object or conception of the artist; in other words, the vision which is interpreted and placed upon the canvas must be original with the painter. It necessarily follows that the work must be his work. That he has a new and original method is not sufficient basis for the claim of originality when the conception of the picture itself, as in this case, is the work of another. . . .

In *Baldwin Shipping Co.* v. *United States, supra,* the merchandise was statuary produced in the likeness of photographs of deceased persons which the Court of Appeals held to be original sculptures. In rejecting a contrary view entertained by the Board of General Appraisers, following its views in *American Express Co.* v. *United States, supra,* the Court of Appeals said (pp. 130–131) :

We think the Board of General Appraisers has misapprehended the purpose and intent of paragraph 652. If correct in its view regarding the same, it is difficult to see how an original statue of any person can be produced, if it is a likeness of the individual it represents, that would be entitled to free entry thereunder. And the same conclusion would follow as to paintings, drawings, and sketches.

In other words, if the artist, painter, or sculptor is limited to reproducing upon canvas or in marble (or other media of presenting the sculptor's art) a truthful resemblance or likeness of the form and features of the living subject, he can not produce an original painting or sculpture. This statement reduces to the logical conclusion that to produce an original sculpture the artist must present something he has conceived or imagined and not something that exists. It must be an ideal, not a reality. That is what the board apparently had in mind.

\*　　\*　　-\*　　\*　　\*　　\*　　\*

We are of opinion that under that paragraph a statue may be an original when produced by the sculptor from a photograph as well as from a person sitting before him. In each case it is clearly the effort and desire of the sculptor to show upon the marble the form and features of the person whom it is designed to represent, but in attempting to accomplish these results he calls into play not only his professional skill but his artistic imagination or conception. Of necessity he must do this in order to reproduce in marble the form and features of the subject of the photograph so that the likeness to the original is at once apparent. If he can not present a recognizable likeness, his efforts are in vain because one important purpose of obtaining the statue is that thereby shall be presented such a likeness of the individual. It seems to us that the sculptor who can do this must be possessed of

and exercise artistic imagination and conception of no mean order and we are unable to see why in so doing he is not producing an original sculpture.

And in two cases decided subsequent to the decision in the *Baldwin* case the Court of Customs and Patent Appeals took the view that the originality of an artist's work is not diminished by virtue of the fact that he has received suggestions from others. See *Pitt & Scott* v. *United States*, 18 CCPA 326, T.D. 44584, and *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, 35, C.A.D. 458. Thus, in view of the holdings in *Baldwin*, which we find to have overruled the *American Express Co.* case by implication, and in the *Pitt & Scott* and *Pitcairn* cases, it would appear that neither the furnishing by the importer of the transparency nor the projection of its ideas relative to an ethereal and celestial expression precludes a finding of "originality" in the artists' creation of the involved mosaic panel if the completed work is otherwise the product of the artists' imagination and conception.

We do not believe that the creators of the mosaic at bar can be adjudged to have "copied" La Farge's "Ascension" on the basis of such meager evidence as this record presents of their exposure to the famous oil painting. *Cf. United States* v. *Columbo Co.*, 21 CCPA 177, T.D. 46510. Neither of the mosaicists Ferrari and Bacci saw the painting. And their uncontradicted testimony is to the effect that they exercised their own original creative conception in developing the imported mosaic from the ideas they derived from the transparency. In the *Columbo* case our appeals court held that a mosaic representation of Raphael's oil painting "Disputa", which is painted upon a wall of one of the chapels of the Vatican at Rome, was not a "copy" of the "Disputa" within the meaning of the word "copies" as used in paragraph 1547(a) of the 1930 Act, the common meaning of which term the court construed to be broader than the associated words "replicas" or "reproductions". The appeals court deemed the mosaic in *Columbo* to be a work of art in fact, but concluded that the mosaic could not be deemed a work of art within the meaning of the tariff statutes, citing, among other cases, *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T.D. 36309. And it is to be noted that in the *Columbo* case great pains were taken to reproduce the "Disputa" colorings exactly, that the artist went to the Vatican and personally made color sketches of the painting, and that during the progress of the work, which took about 3 years for completion of the mosaic, the artist personally attended to the making of corrections in order to carry out the proper color scheme.

We also observe that the judicial interpretations which restricted our appeals court's action in *United States* v. *Columbo Co., supra,*

were removed or obviated in the amendment to paragraph 1807(a) which was brought about by Public Law 86–262. In stating the purpose of the 1959 amendment, the report of the House Committee on Ways and Means states (T.D. 54951) :

## PURPOSE

The purpose of H.R. 6249 is to liberalize the definition of "works of art" which may be imported duty free so as to include modern art forms and to ease restrictions on the importation of articles of educational or artistic value when they are meant for exhibition and not for sale. . . .

## GENERAL STATEMENT

H.R. 6249 amends paragraphs . . . 1807 . . . of the Free List of the Tariff Act of 1930, as amended, to provide for the duty-free treatment of items presently dutiable at various rates of duty under a number of paragraphs of the dutiable list of the Tariff Act. All of these Free List paragraphs can be characterized as containing provisions relating to the encouragement in the United States of the industrial and free fine arts.

\*    \*    \*    \*    \*    \*    \*

The amended paragraph 1807(a) adds to the existing Free List of the Tariff Act of 1930, as amended, specific provisions for . . . original mosaics . . . and works of the free fine arts in any other media . . . . The words "any other media" significantly expand the present judicial concept as outlined in such cases as *United States* v. *Olivotti and Company* (1916) 7 Ct. Cust. Appls. 46, 48, T.D. 36309, which have held that works of art in the tariff sense are limited to works of the free fine arts of which the principal types are painting and sculpture.

Under the new statutory concept of works of the free fine arts embodied in these amendments, articles which are recognized as works of art in fact, but which have been denied duty-free treatment under the existing decisions as to what constitutes a work of art, will be entitled to free entry. . . .

Hence, it is our belief that if Public Law 86–262 had been enacted as of the time of the importation of the mosaic panel in the *Columbo* case, the reasoning employed by the Court of Customs and Patent Appeals in that case would probably have led to the conclusion that the mosaic there involved was an "original mosaic." In our opinion, the more compelling evidence in the instant record requires such a conclusion regarding the mosaic panel at bar. Consequently, for the reasons stated, we find upon the evidence that the importer has established its burden of proving that the imported mosaic is an "original mosaic" within the meaning of paragraph 1807(a). The instant protest is, therefore, sustained.

Judgment will be entered accordingly.