AMERICAN COLORTYPE CO. ET AL. *v.* UNITED STATES (No. 1971).[1]

1. CONSTRUCTION, PARAGRAPH 652, TARIFF ACT OF 1913—RELATIVE SPECIFICITY—"PAINTINGS"—"SKETCHES."

The provision of paragraph 652, tariff act of 1913, for "original drawings and sketches in pen and ink or pencil and water colors" is narrower than the provision in the same paragraph for "original paintings in * * * water or other colors."

2. CONSTRUCTION, PARAGRAPH 652, TARIFF ACT OF 1913—"ORIGINAL."

A sketch or drawing is not taken without the meaning of the word "original" in paragraph 652, tariff act of 1913, by the fact that it is the result of the combined concurrent efforts of several artists.

3. CONSTRUCTION; PARAGRAPH 652, TARIFF ACT OF 1913—"UTILITY."

The provision of paragraph 652, tariff act of 1913, excluding from the operation of the paragraph certain articles of utility, applies only to the enumerations of the provision, viz.,"'painting' and 'sculpture' and 'statuary.'" It does not exclude "original drawings and sketches in pen and ink·or pencil and water colors" which serve a utilitarian purpose.

4. WATER-COLOR DESIGNS·FOR GOWNS.

Pen-and-ink or pencil drawings colored with water colors, made on heavy paper or cardboard by artists working with the assistance or under the direction of a master artist, imported to serve as originals for making plates to illustrate women's wearing apparel in dress catalogues and magazines, are classifiable as "original drawings and sketches in pen and ink or pencil and water colors" under paragraph 652, tariff act of 1913, and not as manufactures of paper under paragraph 332.

## United States Court of Customs Appeals, June 3, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42875.

[Reversed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence* and *John J. Mulvaney,* special attorneys, of counsel), for the United States.

[Oral argument Apr. 21, 1919, by Mr Tompkins and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of pictures of female models exhibiting stylish designs of women's apparel. The pictures are in colors, are upon heavy paper or cardboard, and measure about 1½ feet by 2 feet each. They range in value from $50 to $150 each, approximately, and serve as originals from which thousands of copies are produced in similar colors by a plate process. These become inserts in dress catalogues to show the styles of ladies' gowns, and sometimes they appear also in magazines.

The articles were classified by the collector as manufactures of paper, and as such they were assessed with duty at the rate of 25 per cent ad valorem under paragraph 332 of the tariff act of 1913, which reads as follows:

332. Papers or cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms, and all post cards, not including

---

[1] T. D. 38046 (36 Treas. Dec., 497).

American views, plain, decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem.

The importers protested against the assessment, claiming for the articles a classification as "original drawings and sketches in pen and ink or pencil and water colors," and as such entitled to free entry under paragraph 652 of the act, a copy of which follows, with parts in italics:

652. Original paintings in oil, mineral, water, or other colors, pastels, *original drawings and sketches in pen and ink or pencil and water colors*, artists' proof etchings unbound and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculptures" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; *and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility*, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings," "engravings," and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes

The issue thus raised was submitted upon exhibits and oral testimony to the Board of General Appraisers, and the protest was overruled. The importers now appeal from this decision.

The present question therefore is whether the pictures in hand are properly classifiable as "original drawings and sketches in pen and ink or pencil and water colors," and if so whether they are free of duty as such under paragraph 652, supra.

The testimony is rather meager, but it fairly establishes the fact that these pictures are produced by artists who work with the assistance or under the direction of a master artist, and that the pictures are first drawn or sketched upon the paper in pen and ink or pencil, and then colored in water colors.

It will be observed that the paragraph in question contains two enumerations which are nearly allied with one another, both of which must be considered in the present case. The first includes "original paintings in * * * water, or other colors;" the second covers "original drawings and sketches in pen and ink or pencil and water colors." Both of these classes include pictures which are colored by means of water colors, and in this particular the present articles respond alike to both descriptions. But the second enumeration contains a limitation not found in the first, which is that it shall apply only to such pictures as are drawn or sketched in pen and ink or pencil, even though they be colored in water colors. The

present articles according to the testimony distinctly respond to these requirements of the second classification. They are first drawn or sketched in pen and ink or pencil, and are then colored with water colors as described. They are also original pictures, even though several persons collaborated in their production. A picture which is thus produced as a new creation is none the less original because of the fact that it results from the combined concurrent efforts of several artists.

We conclude therefore that the present articles are within the enumeration of "original drawings and sketches in pen and ink or pencil and water colors," contained in the paragraph in question.

It is contended by the Government that notwithstanding this conclusion the protest should nevertheless be overruled because of the obvious fact that these pictures are utilitarian in character and purpose. In support of this contention the Government cites the proviso which appears in the paragraph as follows: "And the words 'painting' and 'sculpture' and 'statuary' as used in this paragraph shall not be understood to include any articles of utility."

In answer to this contention, however, it may be observed that the nomenclature of paragraph 652, supra, distinguishes between the terms "painting," "sculpture," "statuary," and "drawings and sketches," all of which appear in the paragraph as primary terms of classification. And that the proviso in question specifically applies only to "painting," "sculpture," and "statuary," and contains no reference to "sketches and drawings." The entire omission of the latter enumeration from the proviso is significant in the light of the context of a legislative intention to exempt such articles as these from its force and effect.

In this view of the case we hold the present articles to be entitled to free entry under paragraph 652, supra, and the decision of the board overruling the protest is therefore *reversed.*

### DISSENTING OPINION.

SMITH, Judge: I am sorry to say that I can not agree that the importation in issue is entitled to free entry. The goods are pictures of women's frocks and gowns draped to the female figure so posed as to display the dress pattern, its hang, and coloring. The pictures are painted in water colors on heavy paper or cardboard and are the originals for the production by a plate process of thousands of copies designed to be used as inserts either in dress catalogues or fashion magazines. The pictures are not outline delineations, and they are neither the broad representations which serve to record for the artist the principal features of the thing to be portrayed nor the preliminary studies which are necessary for the realization of his complete artistic conception. They are the finished work of the artist done in water

colors and not in pencil, chalk, crayons, or other hard material. They are therefore neither drawings nor sketches as these terms are commonly used and popularly understood.

Webster's International Dictionary:

*Drawing.*—2. The act or the art of representing any object by means of *lines and shades;* especially, such a representation when in one color, or in tints used not to represent the colors of natural objects, but for effect only, and *produced with hard material such as pencil, chalk, etc.;* delineation; also, the figure or representation drawn. (Italics mine.)

*Sketch.*—n. An *outline* or *general delineation of anything; a first rough or incomplete draught or plan of any design; especially, in the fine arts, such a representation of an object or scene as serves the artist's purpose by recording its chief features; also, a preliminary study for an original work.*

*Syn.*—Outline; delineation; draught; plan; design. Sketch, outline, delineation. An outline gives only the bounding lines of some scene or picture. A sketch fills up the outline in part, giving broad touches, by which an imperfect idea may be conveyed. A delineation goes further, carrying out the more striking features of the picture, and going so much into detail as to furnish a clear conception of the whole. * * *—*Crabb.*

*Sketch.*—v. t. 1. To draw the outline or chief features of; to make a rough draught of. 2. To plan or describe by giving the principal points or ideas of.

*Syn.*—To delineate; design draught; depict.

As I see it, to hold that pictures such as those imported are either drawings or sketches must result in wiping out entirely the well-settled distinction between original paintings and original drawings and sketches. In other words, if pictures painted in water colors and the complete conception of the artist are either drawings or sketches, then every finished painting in water color becomes a sketch or drawing, and that means of course free entry to all water-color paintings even if used for a utilitarian purpose—a result which was certainly not intended by Congress. The fact that the witnesses testified that the pictures were first drawn or sketched in pen and ink or pencil and then colored with water colors does not help the conclusion reached in the prevailing opinion, inasmuch as water color and other paintings are generally made in just that way; that is to say, they are first drawn, outlined, sketched or delineated and colored. The portrait painter draws the face and figure, sketche draperies and surroundings and completes the work by painting or coloring it. The portrait, however, could hardly be called a sketch or drawing simply because sketching and drawing figured in the making of the portrait.

The goods are finished complete—original pictures painted in water colors—and are therefore original paintings in water colors. As they are admittedly designed for a utilitarian use, however, they are expressly excluded from the operation of paragraph 652 and are therefore not entitled to free entry.

I am of the opinion that the decision of the Board of General Appraisers should be affirmed and not reversed.