TOWER & SONS *v.* UNITED STATES (No. 2128).[1]

WATER-COLORED STYLE CARDS.

The merchandise is water-color representations on cardboard of women and girls wearing certain styles of garments and of certain styles of women's and children's garments. For the most part the human figures have landscape backgrounds. These pictures are designed to be used for making cuts to be used in catalogues for the purpose of advertising the garments depicted. Some are water-colored photographs. Some have pasted on them small pieces of the fabric advertised. They are shown to be the result of the combined efforts of a number of different artists working independently. The figures are conventional and the pictures appear rather crude and mechanical. The decision of the Board of United States General Appraisers overruling a protest claiming free entry as "original drawings and sketches in pen and ink or pencil and water colors," under paragraph 652, tariff act of 1913, against their assessment as manufactures of paper, under paragraph 332, is affirmed.

United States Court of Customs Appeals, May 9, 1922.

APPEAL from Board of United States General Appraisers, T. D. 38792 (G. A. 8454).

[Affirmed.]

*Finkler & McEntire* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Pelham St. George Bissell,* special attorneys, of counsel), for the United States.

[1] T. D. 39125.

[Oral argument April 26, 1922, by Mr. Lawrence.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

BARBER, Judge, delivered the opinion of the court:

Two importations are involved in this case. The invoice accompanying one described the merchandise as color drawings for catalogues, and the entry described it as original water-color paintings. As to the other it is described in both the invoice and the entry papers as pencil and water-color drawings.

All the merchandise was assessed as manufactures of paper under paragraph 332 of the tariff act of 1913. Free entry was claimed in the protests under paragraph 652 of the same act as original drawings and sketches in pen and ink or pencil and water colors. An alternative claim was made under paragraph 376. That claim is not urged in this court.

All the testimony heard by the Board of General Appraisers was given by one witness on behalf of the importers. It was, however, claimed by the importers and conceded by the Government that two other witnesses, if called, would testify substantially the same, and the case was disposed of with that understanding.

We can do no better in presenting the issues in this case than to quote liberally from the opinion of the board written by Judge Waite. Therein it is said—

Samples of the importation were presented at the hearing and appear to be water-color paintings on cardboard, the pictures themselves being about 18 by 20 inches in size, with figures of women and girls and of women's and children's garments, in some cases on the figure. The articles sought to be advertised by these pictures are for the most part represented as being on figures superimposed upon a landscape wherein are depicted lawns, flowers, walks, fences, walls, trees, sky, and various buildings in the background.

We have to resort to our general knowledge of how such pictures are made to assume that there is any pencil or pen work in the pictures. Some of them, we are advised, were made by photographing the objects, after which the photographs were colored with water colors. Most, if not all, the exhibits before us are the result of the combined efforts of various people. The witness for the importer describes the method of making these pictures as follows:

In the first place a square is drawn in proportion to our catalogue pages. (This we understand to be a purely mechanical operation.) Then that is given to an artist who is called the layout artist. He sketches the bodies of the figures in pencil; then that is given to a head artist who does the head, hands, and feet in color. After that it is given to a sketch artist who sketches the merchandise on the figures, the dresses, coats, whatever they happen to be. After that it is given to a wash artist who puts the color on the garments. It next passes into a detail artist's hands who puts the cloth effects or serges and checks, the buttons, etc. It next passes into an artist's hands who puts in the backgrounds in between here. That completes the drawing.

We understand the expression "the backgrounds in between here" to mean all the picture exclusive of the figures and representations of garments—the landscape and buildings.

We are not unmindful of the fact that what is described as "similar merchandise" has been passed upon by the Court of Customs Appeals, but it is not present for com-

parison. In our judgment each picture of this nature must be passed upon separately and depends for its classification upon various qualities, such as the skill displayed, its originality, whether it is a sketch or a painting, and finally, whether it is a work of art.

The testimony shows that whatever are represented in these designs as garments, such as skirts and waists, are actually before the one producing them or transferring them to the card. There is nothing original in the conception or production of the pictures. If there is any originality displayed at all, and upon that point we are not informed, it is in the picture itself, landscape, sky, trees, etc., which appear as a material and important part of the production.

There is no variety in the faces, except perhaps a variety of pose. They are from the same pattern, a marked similarity running through them all. Probably two patterns, one for the children and one for the adults, would be sufficient from which any ordinary draftsman with mechanical skill could produce every face represented. The only change of expression in the faces seems to be caused by either opening or closing the lips. The paint is put on the features roughly.

This merchandise is imported for the purpose of mail-order advertising. The pictures are reduced in size and transferred to plates, from which are printed similar pictures for the catalogues of the mail-order house. In this instance they are all for the one house. When the catalogue has been published the pictures are of no further use either as works of art or as a commercial commodity.

When Congress provided for the free entry of water-color paintings exclusive of those having an utilitarian purpose, and at the same time provided for sketches and drawings also free of duty, it must be assumed that they desired to encourage the production of artistic objects and pictures. We must assume that they used the terms in the ordinary sense; that a sketch and drawing should respond to the ordinary dictionary definitions; that a painting is a picture made by the application of colors, water or oil, by means of a brush, with the idea of producing something artistic. But they did not have in mind the representation of a silk petticoat, a red hat jauntily worn or a lock of hair fetchingly arranged, as a work of art. And certainly when such representations are made to all appearances by the application of water-color paints Congress did not intend they should be classified as drawings and sketches, having drawn a distinct line of demarcation between water color paintings and drawings and sketches.

The avowed purpose for which these pictures are produced is utilitarian—for advertising only. The pictures are in no way original. There is nothing in them that could not be produced by a novice in art from patterns or copies, given a reasonable amount of elemental training in drawing. It is true these are more pleasing, perhaps, than if other subjects were selected, but there is no more reason why they should be called works of art and original productions by artists than if they were representations of plows, harrows, mowing machines, wagons, threshing machines, and the like. If we were to hold these pictures free of duty under paragraph 652 we would in our judgment depart far from the design and intent of Congress when it enacted this rather exclusive and specific provision. If they are to be admitted free as paintings it must be because they are works of art and are original conceptions of the artist, and not imported for use in connection with any utilitarian purpose. If they are sketches or drawings and free of duty because the utilitarian clause does not apply to them, they should at least have merit as works of art and should be original.

In addition to this we note that the witness also testified, in answer to a question by Judge Waite, that the reason the exhibits pass through so many hands was "owing to the fact that one man doing just one part becomes very proficient both in speed and practice," and further, that some of the imported cardboard pictures

contain small swatches or pieces of the material, typical of the garment, which were "stuck down" on the figures on the cardboard. It also appeared that the witness, Mr. Ecclestone, was one of the witnesses in the case of MacLoughlin v. United States, hereinafter referred to, and in the instant case he testified that the samples here "are the same character of work as in that case," but he did not say, and we are not advised, which of the samples now before us, if any, are substantially identical in manner of production with those in that case. It will later herein appear that three of the five typical exhibits. there were denied free entry. Neither the exhibits in the Colortype Co. case, also hereinafter referred to, nor the exhibits in the MacLoughlin case are now before us.

There are before us eight cardboard sheets conceded to be typical of some of the merchandise, and an illustrative exhibit which shows pages of catalogues upon which appear printed pictures in reduced size illustrating the use to which the sample exhibits, or those similar thereto, are put.

From what we have quoted from the opinion of the board it is plain that it found the merchandise as represented by the exhibits was not original sketches or drawings.

The board also held that the importations were not works of art and therefore not within the provisions of paragraph 376, but as the question of classification under that paragraph is not raised by this appeal it is unnecessary of consideration here.

The appellants in effect rely upon the authority of American Colortype Co. v. United States (9 Ct. Cust. Appls. 212; T. D. 38046) and MacLoughlin v. United States (10 Ct. Cust. Appls. 37; T. D. 38261), urging in substance that, although the board has found that the drawings or sketches here are not originals, such finding is contrary to law upon the evidence and against the rule of the cited cases.

We insert here paragraph 652:

Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen and ink or pencil and water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze, or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings," "engravings," and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes.

It becomes necessary to review to some extent the cases relied upon by the importers, and in so doing we refer to the evidence of record therein.

In the opinion in the Colortype Co. case it was said that the testimony was meager, but established the fact that the pictures were produced by artists who worked with the assistance or under the direction of a master artist, and that the pictures were first drawn or sketched upon paper in pen and ink or pencil and then colored in water colors.

The record in that case shows that there was only one sample exhibit and only one witness who testified as to its character and the method of producing it. He said he was an experienced artist engaged in supervising art work; that he had done work like the exhibit; that it was an original water color drawing; that in technique, coloring, lights, shades, and details it conformed to artists' rules and was in his opinion a work of art. He did not testify as to the number of artists who participated in producing any one such drawing or the part each took therein, but his uncontradicted testimony left the impression, and justified the conclusion, that such work was the product of the genius of one artist who supervised the work and was only aided in its production by others who attended to some of the details.

In view of this explicit uncontradicted testimony of an apparently competent witness, it was held the importation was entitled to free entry under paragraph 652.

In the MacLoughlin case the witness Ecclestone testified that he was art superintendent of a concern in Canada; had for twelve years done work as an artist and was familiar therewith. He was shown the five exhibits in that case; testified that they were water-color drawings first outlined with pencil and then filled in with water color and used for the same purposes as shown by the record in the present case. He described the method of producing them substantially as it is described in the record here. Such productions were, he said, "turned out by six or eight artists as a mechanical process." His testimony was corroborated by other witnesses.

The testimony and the exhibits we held established that the merchandise should be divided into two classes, the first class being represented by two exhibits like the exhibit in the Colortype Co. case, and the second by three, which were different therefrom in that on each exhibit something had been pasted, either a piece of fabric or a piece of paper or a cut containing a picture, drawing, or painting. As to the cards of the first class the Government conceded they were quite similar to the merchandise of the Colortype Co. case, while as to those of the second class the importers urged that they were within the rule of that case, which the Government denied, and the argument in this

court really proceeded upon the theory that the only issue was whether these cards of the second class were or were not entitled to free entry as within the earlier decision. The Government, however, renewed and emphasized its contention in the Colortype Co. case that the collocation of paragraph 652 required that drawings or sketches to be entitled thereunder to free entry should possess genuine artistic merit of the higher order of art.

In view, however, of the concession that the articles represented by two of the exhibits were quite like those of the Colortype Co. case, such merchandise was held by us, without discussion, to be entitled to free entry. As to that represented by the other three exhibits the court said, by Judge Martin, that they were not original drawings or sketches because they consisted in substantial parts of figures laid thereon "composed of sample pieces of actual dress goods" or "of exact copies or cuts of various kinds of merchandise, such as rolls of wall paper, linoleum, upholstery goods, and similar articles," which facts, it was held, forbade their classification as original drawings or sketches in pen and ink or pencil and water colors.

Now, in the case at bar the testimony, summed up in what we have quoted from the opinion of the Board of General Appraisers, and from our own examination thereof, excludes the idea that the merchandise is made under the supervision of a master artist. It is true that it characterizes each of these separate individuals working on the cards as artists, but it clearly also establishes that each was working independently of the other and without the direction of any master mind whose purpose was to produce his own original drawing or sketch. Some of these independent workers, as the witness testified, from the standpoint of expediency used photographs which they colored; others used small swatches of the material which was stuck on the cards. The sketch artist outlined garments handed him for the purpose, and the wash artist colored the sketches to correspond to the colors of the garments. The garments themselves were designed by someone else. Speed in production seems to have been a more important or desirable qualification of the artists who were employed than originality or artistic taste or talent, and the whole record indicates that these exhibits are more the product of mechanical than artistic skill. It may be noted in this connection that no witness expressed the opinion that these exhibits are works of art as was the fact, as already pointed out, in the Colortype Co. case.

From the record in this case we are unable to say that the Board of General Appraisers has erroneously misconceived or applied the law in its conclusion that these are not original drawings or sketches within the meaning of paragraph 652, and therefore are unwilling to set aside its finding in that regard.

It should be added that if in fact the merchandise in the Colortype Co. case was produced as was that here, such fact was not disclosed. It is equally clear that the conclusion in that case that the articles were entitled to free entry was based upon the understanding that they were *original* drawings or sketches, produced by artists under the direction of a master artist, or master artistic mind. This would naturally imply, and the court inferred, that there was *some* artistic merit in each of the respective articles of the importation. The same may be said as to what was really decided in the MacLoughlin case, and to that view we still adhere.

. In this case the board has, by its finding, supported, as we think, by the evidence, negatived the existence of these prerequisite conditions, and its judgment is therefore *affirmed.*