(C. D. 486)

Amedeo G. Paternostro *v.* United States

United States Customs Court, Third Division

(Decided May 2, 1941)

*G. W. R. Wallace; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges; Keefe, J., not participating

Cline, Judge: On April 7, 1941, the court rendered decision in this case (C. D. 463), but, finding error therein, the court of its own motion, hereby amends the decision to read as follows:

This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain paintings which were returned at the rate of 35 per centum ad valorem under paragraph 1413 of the Tariff Act of 1930. It is claimed in the protest that the articles are dutiable at 15 per centum ad valorem by virtue of paragraph 1547 (a) of the Tariff Act of 1930 as amended by the British Trade Agreement, or at 25 per centum ad valorem under paragraph 1410. Prior to the time when the case was called for trial, an amendment to the protest was filed in which it is claimed that the merchandise is dutiable at

20 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930. The trade agreement with the United Kingdom, under which plaintiff claims, is published in T. D. 49753. By Presidential Proclamation this agreement went into effect provisionally on January 1, 1939, with the exception of article XI and of schedule III, not herein involved. On December 6, 1939, the President proclaimed that all four schedules of the trade agreement "will come into force definitively on December 24, 1939 (T. D. 50030)." The merchandise in this case was entered on November 18 and November 28, 1939, when schedule IV of the trade agreement was provisionally effective.

The plaintiff does not rely on his claim under paragraph 1410. The only provisions involved read in part as follows:

PAR. 1413. * * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem; * * *

PAR. 1547 (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same * * * all the foregoing, not specially provided for, 20 per centum ad valorem.

PAR. 1547 (a) (as amended by the Trade Agreement with the United Kingdom) Paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, all the foregoing which are works of art, not specially provided for—15% ad val.

The first witness called by the plaintiff was the importer, Mr. Amedeo G. Paternostro, who produced twenty-eight pictures and testified that they represent the items on the invoices. These articles were admitted in evidence and marked "collective exhibit 1." The witness testified that he had sold such pictures to wholesalers and manufacturers who in turn sold them to stores and gift shops; that he had seen the same and similar pictures for sale in the art department of the Boston Store and the Fair in Chicago. On cross-examination he testified that he paid 5 lire for some of the pictures and 6 lire for the others, which amounted to about 25 cents and 30 cents in United States currency.

The next witness called by the plaintiff was Mr. John M. Cadel, a professional artist engaged in portrait, mural, and landscape painting and who also is a teacher of art in the Art Institute of Chicago. He testified that in his opinion the pictures in collective exhibit 1 are works of the free fine arts. When asked to state why they belong in that class, he said:

* * * I think that work is done with the help of a stencil, but it is highclass work, and I do believe that only a man that is a first class craftsman can do it. If you will notice the texture marks. That is work that a regular house painter cannot do even with a stencil. Besides that, basically, is drawn with a pen and ink, free hand. This is a definite field of art in commerce. The one thing that stands out is these texture marks. You can see the brush marks. The whole thing is done in such a way that it has artistic merit to it.

Q. Do the pictures, in your opinion, show artistic conception?—A. They are good composition; they are arranged in good colors. The way they are done shows definite good taste.

On cross-examination, when asked whether he would hang any of these pictures in the Art Institute and represent them to be works of art, he answered in the affirmative. When asked if any "made in the manner depicted by these pictures" are exhibited in the Art Institute, he said, "Yes, there is the case of Cannouscious. He has a few primative pieces something of this kind. Some are inferior in quality." When asked if the pictures in the Art Institute were made by the same process as the exhibits in evidence, he said, "Part of them yes, of Mr. Cannouscious." The attention of the witness was directed to picture number 129, one of the exhibits in the case, and he was asked if the blue part was put on by a hair brush or hand brush. He said:

A. It was done by hand. With a hair brush you don't have texture marks. You can see, if you look close you can see texture marks like you see in a Japanese print. A very fine job, you can see it from the surface. You have to look close, but definitely I can see it.

X Q. Is there any stencil work on it?—A. Yes, there is stencil work. They did that kind of a job with it. I have to say that.

X Q. It is definitely stencil work?—A. It is stencil work, yes.

When asked if the entire picture was made by one artist the witness answered:

A. In the case of the artist, the conception is made by the artist, and he has a helper that does the mechanical part. But it is definitely the conception of an artist, and he supervises the work and retouches it when the helper finishes.

Questions were asked the witness concerning a picture having number 146 thereon, but we are unable to find that picture in the exhibit. The following testimony has reference to all of the pictures in the exhibit:

X Q. These, then, are the work of an artist who creates the outline, and he has, a helper, what you call a helper, or somebody that does the filling in?—A. He does the filling in.

X Q. That is true of all of these pictures?—A. As far as I can see, it is true of all of these.

X Q. That is, all of these pictures contained in this Collective Exhibit 1?—A. Yes. In some cases, as I said before, you notice the pen and ink lines which is done probably by the artist who created the composition. For instance, in the case of the religious subjects the artist drew the pen and ink lines.

When asked to describe a stencil, the witness said:

It is a form of work and you have a pattern by which you cover part of a surface and leave part of the surface free. You can do a pretty bad job and you can have highclass work in that class of work.

When asked his opinion as to the meaning of the term free fine art, the witness said:

A. Everything that is created, everything you have of highclass composition, everything you have that is well balanced in the whole piece, is free fine art.

When asked to state the difference between free fine art and industrial art, the witness stated:

A. In free fine art, the artist is designing something in his own free right. In industrial art, the artist is designing an object for something else, for a factory, for an automobile, for a house. In the free fine arts, we have sculptors; we have landscape people.

Finally the attention of the witness was directed to all of the exhibits and he was asked the following questions:

X Q. Take these pictures here. In what field would you say they are, industrial art, decorative art, or free fine art?—A. I would say they are works of art, in the decorative field.

X Q. Do you mean they are all three, in your judgment?—A. In the decorative field, definitely.

On redirect examination the witness testified that the objects in collective exhibit 1 "are paintings as far as a brush has been used there."

The next witness called by the plaintiff was Mr. Francisca S. Capparelli who stated that he had studied drawing and designs in Italy about 55 years previously; but that he had never made a study of free fine arts. He testified that he has been in the art business for many years and that he lectured on art in the schools of Chicago from 1898 until 1930 when he retired; that in his opinion the paintings in collective exhibit 1 are works of art. When asked for the reasons which influenced him in his belief, the witness said:

A. Because they are works of art. Let me explain. Anything that is beautiful, that appeals to the people, you know, that is a work of art. It makes no difference

what it is, if it is beautiful. If it is even a building, if it is beautiful and appeals to the people's senses, if you have any feeling of beauty in your heart you appreciate the art more.

On cross-examination the witness answered the following questions:

X Q. And you think because they are beautiful, in your opinion, therefore they are works of art?—A. It is not only because they are beautiful, also because they are executed artistically. They are executed artistically.

X Q. How were they executed? You say they are executed artistically. How were they executed?—A. Executed with a brush, possibly with the aid of a stencil. This question of a stencil, it is a guide that the artist must have to execute the picture.

X Q. Does the artist always have a stencil?—A. If he don't use a stencil he uses a pen.

X Q. The stencil, you say is a guide?—A. It is a guide; it's a mechanical thing, you know; it is a guide for the artist.

X Q. Any craftsman can paint by the use of a stencil as distinguished from an artist?—A. With a stencil, you must learn to do it.

X Q. But any craftsman can do stencil work?—A. Yes, that's right.

X Q. You don't have to be a celebrated artist to do stencil work?—A. Celebrated artist, what do you mean?

X Q. Do you have to be a real artist to do stencil work?—A. Anyone that produced these things is a good artist.

The witness defined "free fine art" as "beautiful art" and "industrial art" as art that the "artist designs for an object that is going to be manufactured."

Counsel for the defendant produced a report of the collector which was received in evidence over the objection of counsel for the plaintiff and marked "exhibit 2." It reads as follows:

UNITED STATES CUSTOMS SERVICE COLLECTOR'S MEMORANDUM

[Not a part of protest.]

District No. 39, Port of Chicago, Ill.
Date March 19, 1940
Protest No. 89108. Protestant Amedo G. Paternostro

The merchandise is Works of Art n. s. p. f. assessed for duty under Par. 1413 Tariff Act of 1930 at 35% ad valorem T. A. 1930.

Remarks: The merchandise consists of stencilled pictures mechanically processed. They are not printed and therefore do not come within the provisions of Par. 1410, as claimed; nor are they works of art and, therefore, are not classifiable under Par. 1547, as claimed, but are properly dutiable as manufactures of paper n. s. p. f. under Par. 1413 T. A. 1930 at 35% ad valorem.

JOSEPH A. ZIEMBA
Collector of Customs
By NEIL E. McKELLAR
Assistant Collector.

An examination of the articles in collective exhibit 1 seems to confirm the statement of the expert witnesses that the main features of the scenes in the pictures were placed thereon by means of paint and a brush in the hands of an artist, because the paint and brush marks are plainly discernible. In the religious pictures, the pen and ink outlines of the figures are visible and serve in setting forth the design and dress of the characters depicted thereon. The complete pictures appear to be the realized sentiment of the artist.

It is manifest from exhibit 2 that the collector was of opinion that the articles are not paintings which are works of art because stencils were used in the production of portions of the pictures. A similar issue was decided by the Circuit Court of Appeals, Second Circuit, in the case of *United States* v. *China & Japan Trading Co., Ltd.,* 58 Fed. 690. The merchandise in that case consisted of wall decorations made of paper, paper and cotton, or narrow strips of bamboo joined together

with cotton cord, and upon which representations of flowers, birds, or human figures were painted in water colors, a large body of the colors being applied by stenciling. The Board of United States General Appraisers held that the articles were not paintings but the decision of the trial court was reversed by a judge of the Circuit Court and his decision was affirmed on appeal. The appellate court said:

> They were very cheaply made in Japan, and were valued at from 17 to 45 cents each. The theory of the collector was that the figures and devices were produced by stenciling; that this process did not convert the material to which it was applied into painting; and that the articles were dutiable, respectively, as manufactures of paper * * *
>
> * * * * * * *
>
> The general appraisers had before them the samples, the statement of the assistant appraiser, who thought that the articles were entirely stenciled, and the testimony of a clerk of the importers, who thought otherwise. In our opinion, the samples are by far the most important part of the testimony, and show that, while the large bodies of color may have been applied by stenciling, the features of the work, which are delicate and ornamental, and which give character to the article, were added by hand.

The decision of the circuit court is affirmed.

In the case of *C. H. Langley* v. *United States*, 31 Treas. Dec. 366, Abstract 40321, the court passed upon paintings in which the outlines were produced by a stenciling process and a spray was used in coloring the background. The pictures were classified under the provision for works of art, including paintings, in paragraph 376 of the Tariff Act of 1913, which is the predecessor of paragraph 1547 (a) of the Tariff Act of 1930. The court held that the articles were dutiable as classified by the collector, inasmuch as they were not within the free-list provision for original paintings, as claimed by the importers, because of the free list provision which the importers claimed exempted such articles "as are made wholly or in part by stenciling or any other mechanical process." The same exemption is contained in paragraph 1807 of the Tariff Act of 1930 but that exemption applies only to that particular paragraph. Congress made no such exemption in connection with paragraph 1547 (a) and it is not contained in the trade agreement.

Counsel for the defendant argues that the pictures are not works of art because a helper or assistant of the artist did some of the work thereon. We are of opinion that where a helper or assistant of the artist works under the directions and control of the artist, such additional work as the helper or assistant may do does not affect the question of whether or not the article produced is a work of art. The case of *American Colortype Co. et al.* v. *United States*, 9 Ct. Cust. Appls. 212, T. D. 38046, settles that contention. In that case sketches of wearing apparel were designed and drawn by an artist and completed by his assistant working under the supervision of the artist. The articles were classified under the paper provisions of the Tariff Act of 1913 which are the predecessor provisions of paragraph 1413 of the Tariff Act of 1930 under which the collector classified the articles involved. The importers claimed that the articles were free of duty as "original drawings and sketches in pen and ink or pencil and water colors" under paragraph 652. The court held that the sketches or drawings were originals and were free of duty. The court said:

> They are first drawn or sketched in pen and ink or pencil, and are then colored with water colors as described. They are also original pictures, even though several persons collaborated in their production. A picture which is thus produced as a new creation is none the less original because of the fact that it results from the combined concurrent efforts of several artists.

This court followed the same principle in *Robert Carrere* v. *United States*, 65 Treas. Dec. 1508, Abstract 25940, in regard to paintings which were designed by an artist and completed under his supervision by his assistant. They were held free of duty under paragraph 1704 of the Tariff Act of 1922. See also *Tutton* v. *Viti*, 108 U. S. 312, relating to sculptures made under the direction of a professional sculptor. The court said:

There is nothing in the Acts of Congress to limit the professional productions of a statuary or sculpture to those executed by a sculptor with his own chisel from models of his own creation, and to exclude those made by him, *or by his assistants under his direction*, from models or from completed statues of another sculptor, or from works of art, the original author of which is unknown. [Italics ours.]

Counsel for the defendant, in his brief, cites in support of his contention the case of *A. N. Khouri & Bro.* v. *United States*, 1 Cust. Ct. 92, C. D. 27, which related to molded glass vases, coupes, figurines, cendriers, and like articles. It appears from an examination of the decision that the original sketches and models of the articles were designed and produced by an artist and molds were made therefrom by his assistants. The molds were then touched up by the artist after which the glass articles were molded by artisans. Many replicas of the articles were made from each mold. The court held that the articles involved came within the second class of works of art described in *United States* v. *Perry*, 146 U. S. 71, which the United States Supreme Court held were not intended by Congress to be granted special favors. The second class is described by the court as follows:

2. Minor objects of art, intended also for ornamental purposes, such as statuettes, vases, plaques, drawings, etchings, and the thousand and one articles which pass under the general name of bric-a-brac, and are susceptible of an indefinite reproduction from the original.

The articles in this case are in the nature of the things which the Supreme Court described in its first class and which the court held were intended by Congress to be granted special favors. That class reads as follows:

1. The fine arts, properly so called, intended solely for ornamental purposes, and including paintings in oil and water, upon canvas, plaster, or other material, and original statuary of marble, stone, or bronze.

We are of opinion that the merchandise herein involved is different in character from that in *A. N. Khouri & Bro.* v. *United States, supra*, and that the decision in that case is not controlling herein. The provision in paragraph 1547 (a), as amended by the trade agreement with the United Kingdom, under which the plaintiff bases his principal claim, is not limited to original paintings. It covers all paintings in oil or water colors, pen and ink drawings, replicas and reproductions of any of the same, the only limitation being that the same shall be works of art and not specially provided for. Original paintings, not made wholly or in part by stenciling or any other mechanical process, are specially provided for in paragraph 1807 and all other paintings which are works of art fall within paragraph 1547.

We find that it is established by the weight of evidence that the articles herein involved are paintings and that they are works of art within the meaning of the provisions in paragraph 1547 (a) as amended by the trade agreement with the United Kingdom. As such, they are more specifically provided for in paragraph 1547 (a) of the trade agreement than as manufactures of paper under paragraph 1413. As the articles are the product of Italy, they are entitled to the same rates of duty which are provided for paintings in paragraph 1547 (a) in that trade agreement and we hold that the merchandise is dutiable at 15 per centum ad valorem thereunder. That claim in the protest is sustained. Judgment will be entered for the plaintiff.