(C. D. 1472)

FOREST LAWN MEMORIAL-PARK *v.* UNITED STATES

United States Customs Court, Third Division

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*John J. Antus* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This action involves protests, consolidated at the trial, against the collector's assessment of duty on two marble statues, "Christus," or "Christ in the Garden," and "Madonna Sistina," at 20 per centum ad valorem under paragraph 1547 (a) (2) of the Tariff Act of 1930 as works of art, including statuary, valued at not less than $2.50, not specially provided for. It is claimed that the statues are original sculptures or statuary entitled to free entry under paragraph 1807 of said act. Claims in the protests that the articles are entitled to free entry under paragraph 1811, which relates to works of art produced prior to 1830, have apparently been abandoned by the importer.

The pertinent provisions of the tariff act are as follows:

PAR. 1547. (a) Works of art, including * * * (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * * all the foregoing, not specially provided for, 20 per centum ad valorem.

PAR. 1807. * * * original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *. [Free]

At the trial Frederick A. Hanson, called as a witness for the plaintiff, testified that he has been head of the architectural department and landscape architect of Forest Lawn Memorial-Park for 23 years. He described that establishment as a cemetery of over 300 acres, characterized by being a center of art, culture, and spiritual inspiration in addition to its practical use as a place of interment. The witness stated that he had worked at architecture most of his life and that his principal education was of a practical nature, although he had taken study courses in Beaux Arts, a branch of the original Paris Beaux Arts set up in this country for the instruction of architectural

design. During the course of his employment at Forest Lawn, working with Dr. Eaton of the art committee, he had made numerous trips in Europe and America for the purpose of finding works of art for purchase. Either alone or in collaboration with Dr. Eaton he had purchased or recommended for purchase two or three hundred pieces of statuary, close to two hundred of which were imported. He also participated in the purchase of a number of religious paintings. After such objects of art have been purchased, he places them by "creating a location and an embellishing entourage of either planting or construction, or both."

Mr. Hanson testified that he was familiar with the two statues involved herein. He described his first contacts with them as follows:

Dr. Eaton had an idea that he wanted a Garden of Prayer at the Church of the Recessional, so he said, "Let us get a Christ praying in the Garden of Gethsemane," so we thought about it for a long time, and decided that it should be a kneeling posture with hands clasped and the face looking upward. Then we set about getting a sculptor to submit ideas.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

When we built our last unit of mausoleum we had a vista spot at the end of a long corridor which we wanted to express in a very spiritual way, and the ultimate outcome of many discussions was that it should be the Madonna and Child surmounted on top of a sarcophagus, so we set about getting a Madonna and Child.

An Italian sculptor named Gabbrielli was engaged to create the "Christ in the Garden" and another named Beneduce to create the "Madonna Sistina."

Mr. Hanson described the method by which a sculptor creates a marble statue as follows:

Customarily, the way most of them work, they make a small sketch model, it is called, somewhere around a foot or 18 inches high. The purpose of this is to study the expression of the figure, the posture, composition. When he is satisfied with this sketch, he steps up to a scale model that is usually somewhat under half life size, and customarily calls it his working model. He attempts in this to get nearer to his final conception, still able to change and modify, and correct, etc. After he is satisfied with this larger model, which is usually three to four feet high, then he brings it to its finished size in a third stage, and on this finished clay he further refines and gives added expression to his statue. After he has the third or full sized clay model made, he then takes a plaster cast. The plaster cast is then further worked to smooth it and make it distinctly accurate. Then what is termed a pointing machine is used, and it is pointed directly from the plaster cast on to the marble block and carved to exactly correspond. The final work is the carved model.

The witness stated that during the course of the work involved herein photographs depicting the progress made were sent from time to time by both sculptors. These were received in evidence as illustrative exhibits. Concerning the photograph of one of the preliminary clay models of "Christ in the Garden" (plaintiff's collective illustrative exhibit A), the witness said:

\* \* \* These were the first studies of Christ in the Garden. He was groping for the idea.

Two other photographs in connection with that statue show the plaster cast of the final clay model (plaintiff's illustrative exhibit B) and the finished marble (plaintiff's collective illustrative exhibit C). Concerning the differences shown between the preliminary models and the finished statue, Mr. Hanson stated:

The early studies were of course not evolved, and the draperies are very considerably different.

\* \* \* \* \* \* \*

The general posture is the same. The details of the draperies are quite different. In other words, it has gone through the study period of bringing it into the realm of a work of art through development of detail.

Mr. Hanson stated that in his opinion the statues were works of art and that they were original sculptures done by professional sculptors. Neither was to be put to a utilitarian or an industrial use. One is to be placed in a garden at the Church of the Recessional, and the other has been placed in a mausoleum unit as an embellishment to the mausoleum. A photograph of the statue, "Madonna Sistina," as it now stands, was received in evidence as plaintiff's illustrative exhibit G.

On cross-examination, Mr. Hanson testified in connection with the statue, "Christ in the Garden," that several paintings were looked upon as inspirational sources and that the sculptor may have been sent, or referred to, photographs. He added:

\* \* \* At the first inception there was a Garden of Prayer. In that Garden there was the desire for a praying Christ. The next stage was to procure a statue that expressed or depicted a praying Christ, so the sculptor was asked to do this: The Christ was to be a kneeling Christ with his hands folded in prayer, but that was not too certain. If you will refer to this exhibit, you will see that he showed two of them with hands in a different manner. Those were his first efforts. Those were his first sketch studies from which he gradually evolved by changing positions of the objects, working in the draperies, getting the beard and face right. All Christs have beards. I can show you a hundred pictures of Christ, all of which have a beard and hair of the same type. It is true that some pictures would look more like the sculpture than other pictures, but referring to the first sketches, you would read into those an original idea on his part, and its gradual evolution to the finished product.

Mr. Hanson stated that the statue, "Madonna Sistina," was inspired by Raphael's painting, "The Sistine Madonna."

The witness stated that copies could be made of the two statues from the plaster casts in the same manner that the original statue was carved by use of the pointing machine and the chisel. He also stated that the casts are in possession of the plaintiff as part of its contract with the sculptors.

Hollis J. Reed, appraiser of merchandise at Los Angeles, testified that he had seen the two statues in question and had found each to be a work of art.

The record also includes the depositions of Donatello Gabbrielli, Gino Varlecchi, and Giuseppe Beneduce, taken in Italy.

Mr. Gabbrielli testified that he has been a sculptor for 50 years, had studied under Professor Fantacchiotti, and had exhibited his works in Cetinje, Montenegro, and Florence. He modeled and sculptured the statue "Christus" ("Christ in the Garden") following a photograph sent to him by the Forest Lawn Memorial-Park. The photograph showed one side only and he had to invent the three-dimensional form. The rough outlines of the statue were sculptured by others under his supervision, but he himself sculptured the details and the expressions and put the finishing touches on the statue. He stated:

The statue is a work of the free fine arts because it is an original creation, creating a plastic product which previously did not exist. It is much easier for an artist to make a drawing or a painting of a statue than for a sculptor to make a statue from a drawing or a painting.

The deponent said that a plaster model was cast from the clay model and was delivered to Mr. Bruno Bearzi. He did not know whether any other statues were made from that model, but he did not believe so.

Mr. Varlecchi testified that he has been a marble carver for sculptures for 50 years, had attended the Instituto dei Bardi and the Instituto S. Croce for 3 or 4 years and had studied sculpture under Professor Vichi for about 4 years. He had exhibited his works at two exhibitions in Florence. He had received an order from Forest Lawn Memorial-Park to create a sculpture following the inspiration of the "Sistine Madonna" and had asked Mr. Beneduce to create the model, after which he (the deponent) copied it in marble. The statue was designed and created by Mr. Beneduce. The rough outlines of the marble statue were sculptured under Mr. Varlecchi's supervision, and he himself sculptured the finished product. In his opinion, the statue is a work of the free fine arts because it represents an original creation and not a mechanical copy of a previously existing statue. The plaster model is in the deponent's study, and only one marble statue was ever made from it.

Mr. Beneduce testified that he was a sculptor and has worked in castings for 39 years. He attended the Accademia di Napoli for 4 years, studied sculpture under Adolfo Barbarinaldi for 3 years and under Francesco Solitario for 2 years, and has exhibited his sculptures in Florence, Edinburgh, and Glasgow. He received an order for a Madonna and Child from Gino Varlecchi, who told him to take the

inspiration from Raphael's "Madonna Sistina," a painting. He designed, created, and modeled the statue. He prepared the original small-scale clay model and also prepared the full-sized clay model. He then cast it in plaster, after which, under his supervision, it was copied in marble by Mr. Varlecchi. He considered the statue to be an original sculpture, since it was modeled by him and since he did not know that there were any others of its kind in existence. To the best of his knowledge, the plaster model was still in the studio of Gino Varlecchi. He was unable to say whether more than one marble statue was made from it, but he did not believe so.

The uncontradicted testimony establishes that the statues in question are not articles of utility or for industrial use. The only issue, therefore, is whether they are original sculptures or statuary, the professional productions of sculptors.

It appears from the record that Donatello Gabbrielli is a professional sculptor and that the statue "Christ in the Garden" was designed, modeled, and created by him or under his supervision. The professional productions of a sculptor have been held to include work done by his assistants under his supervision. *Tutton* v. *Viti*, 108 U. S. 312; *Merritt* v. *Tiffany*, 132 U. S. 167; *American Colortype Co. et al.* v. *United States*, 9 Ct. Cust. Appls. 212, T. D. 38046; *Amedeo G. Paternostro* v. *United States*, 6 Cust. Ct. 291, C. D. 486. Therefore, the statue, "Christ in the Garden," is the professional production of a sculptor.

The clay and plaster models of the statue, "Madonna Sistina," were designed, modeled, and created by Giuseppe Beneduce, a professional sculptor, and the marble statue was made therefrom by Gino Varlecchi, marble carver and sculptor, under the supervision of Mr. Beneduce. It is also a professional production of a sculptor.

The Government claims, however, that the imported statues are not original sculptures but are creations following photographs or paintings. In the recent case of *Samuel Shapiro & Co., Inc., a/c Charles Mason Remey* v. *United States*, 28 Cust. Ct. 191, C. D. 1409, we discussed a number of cases which hold that works of art produced with the use of photographs may be classified as original under certain circumstances and found that the test of originality is whether or not the artist exercised his own esthetic imagination and conception in creating the work. See *Baldwin Shipping Co.* v. *United States*, 12 Ct. Cust. Appls. 128, T. D. 40051; *Calvin Bullock* v. *United States*, 63 Treas. Dec. 531, T. D. 46273; *Samuel Shapiro & Co.* v. *United States*, 63 Treas. Dec. 1350, Abstract 23339; *A. N. Russo* v. *United States*, 59 Treas. Dec. 1414, T. D. 44981; *H. A. Whitacre* v. *United States*, 51 Treas. Dec. 1051, Abstract 1792. It has also been held that suggestions as to subject matter do not detract from the originality of an

artist's work. *Pitt & Scott* v. *United States*, 18 C. C. P. A. 326, T. D. 44584; *Wm. S. Pitcairn Corp.* v. *United States*, 39 C. C. P. A. 15, C. A. D. 458.

In the instant case, it appears that the sculptor, Donatello Gabbrielli, was asked to create a statue of a kneeling Christ and was sent a photograph, apparently of a painting entitled "Christ in the Garden." This photograph is not in evidence, but an examination of the photographs of the sculptor's work at various stages indicates that he used his own esthetic imagination and conception in producing the statue. For instance, the photographs comprising plaintiff's collective exhibit A show two different poses, each of which is distinct from that of the finished statue (plaintiff's collective illustrative exhibit C). In addition, the sculptor created the figure in the round and had to rely entirely upon his own imagination and conception for the side not shown by the photograph.

As to the other statue, "Madonna Sistina," it appears that Mr. Beneduce was instructed to create a sculpture following the inspiration of Raphael's "Sistine Madonna." Here also the photographs show that the sculptor used his own imagination and conception. For example, the drapery, particularly of the headdress, of the small model on the left in plaintiff's illustrative exhibit D is different from that in the finished statue (plaintiff's illustrative exhibit G). Also, the position of the head of the Madonna is different. It is clear that the sculptor did not mechanically copy the painting, but used his own artistic skill and invention in creating the figure in three dimensions.

At the conclusion of the trial counsel for the plaintiff advised the court that the two items in question, in the condition as imported, were at Forest Lawn Cemetery near Los Angeles, one being on display and the other in a storeroom, and suggested that the court personally view the importations. With the consent of counsel for the Government, the court so agreed, and the writer actually visited the cemetery and viewed both sculptures, accompanied by counsel of both the plaintiff and the Government. In addition to the uncontroverted evidence adduced, after viewing both the "Christus," or "Christ in the Garden," and the "Madonna Sistina," the writer is more firmly convinced that these statues are each the original production of the sculptor and therefore are entitled to free entry under paragraph 1807 of the Tariff Act of 1930, as original sculptures or statuary.

Judgment will therefore be entered in favor of the plaintiff to the extent indicated, and the collector will reliquidate the entries and refund all duties taken thereon in accordance with law. In all other respects the protests are overruled.